### Chicago & Alton Railway Company v. Joseph Watsker.

1. VERDICT—*when not excessive.* A verdict for $4,316.75 held not excessive, where the plaintiff at the time of his injury was of the age of twenty-four years and earning $1.50 per day, had never before that time required the attention of a physician, and was in consequence of the injury incapacitated for work for six months, and received injuries which might be permanent.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding. Heard in this court at the February term, 1906. Affirmed. Opinion filed September 14, 1906.

CHARLES E. WISE, for appellant; F. S. WINSTON, of counsel.

JOHN J. BRENHOLT, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On October 10, 1904, appellee, Joseph Watsker, was assisting in hauling lumber from Alton to a point a few miles east of that place, where a bridge was being constructed across a stream known as Wood river. On the day named appellee, with Joseph Ursch, took a load of lumber to the river to be used for bridge purposes, and after unloading the same, at about ten o'clock

A. M., started back to Alton, accompanied by Ambrose and Roswell Bibb and M. L. Lancaster. The wagon contained no bed and was drawn by two horses driven by Ursch. It was raining a little or misting, and appellee was sitting upon the "hounds" of the wagon holding an umbrella over his head. North of and near to the road traveled by appellee and his party is located the railroad tracks of appellant which for more than a mile west of the river run nearly east and west. About half a mile west of the river the railroad track is crossed by a public highway, running north and south. From the place where the lumber was unloaded, the wagon road runs in a northwesterly direction, until it reaches a point near appellant's right of way some 610 feet east of the highway above mentioned, and from thence runs west nearly parallel with appellant's railroad track, along or near to the south line of the right of way. As the team reached the railroad track at the crossing, the parties on the wagon realized that a train was approaching, and the driver suddenly started the horses and cleared the track in safety, but appellee, in his excitement, jumped from the wagon while it was on the crossing, fell upon the track, was struck by the engine and was seriously injured. He brought suit against appellant for the damages received by him, and obtained judgment for $4,316.75, from which the railway company appeals to this court.

The negligence charged by appellee, in his declaration, was that appellant was running its train at a high and dangerous rate of speed, and that the statutory signals were not given in approaching the highway crossing. Appellant insists that appellee failed to prove the negligence alleged in his declaration, that the evidence did not tend to prove that appellee was in the exercise of ordinary care at the time of the injury, that the verdict was excessive and that the court erred in refusing certain instructions offered by it.

The uncontradicted evidence was that the train was running about forty-five miles an hour, but there was

the usual controversy as to whether the whistle was sounded or bell rung, as provided for by the statute. The engineer and fireman both swore that the whistle was sounded for the road crossing and that the bell, which was provided with an automatic bell ringer, rang from the time the train left the Alton passenger station, until after it passed the crossing where appellee was struck. The flagman on the train also swore that the whistle was sounded for the crossing.

On the other hand appellee testified that up to the time he was struck there was no sound of either whistle or bell. In this statement appellee is corroborated to a greater or less extent by eight witnesses, some of whom were on the wagon with him at the time he was injured, and the others near at hand.

Upon the question as to whether appellee was in the exercise of ordinary care just before and at the time of the injury, appellee swore that in approaching the crossing where the road turned north into the highway along the line of the right of way, he looked and listened for the train, but that he could neither see nor hear it. It also appeared there was a hedge fence along the right of way, commencing at a point 693 feet west of the crossing, running west from that point some distance, and also running south from the same point for a considerable distance. Several witnesses, including appellee, testified that immediately west of the highway on the south side of the railroad right of way, there was a field of standing corn, while a photograph which appellant caused to be taken two days later, showed the corn standing in shocks in the field. This was apparently explained by the witness Herman Tuethan, who swore that the corn was being cut at the time of the injury and that there were then a few shocks cut. It was for the jury to find from the evidence in the case, whether the statutory signals were given and whether appellee was in the exercise of ordinary care just before and at the time he was injured,

and we are not at liberty to disturb their findings on those questions, under the conditions shown by the record in this case.

At the time he was injured, appellee was an able-bodied man twenty-four years of age, who had never required the attention of a physician in his life and was making $1.50 a day.. When struck by appellant's engine, his right·leg was broken, right knee joint severely injured, right wrist sprained and left ankle bruised. He was taken to a hospital, where he remained seven weeks, for twenty-nine days of which he was confined to his bed. He was unable to go to work for six months. At the time of the trial, some eight months after the injury, his right leg was a little shorter than the other and his right knee stiff. One of the two physicians examined, testified that the injury was permanent, and another, who was surgeon for appellant, testified that he could not say positively that "his injury is not permanent." While the verdict in this case was a large one, yet in view of the facts we cannot say it was so excessive as to warrant the belief that it was the result of prejudice, passion or any improper motive on the part of the jury, and it should, therefore, be permitted to stand.

Complaint is made that seven instructions offered by appellant were refused by the. court. The first of these instructions referred to the necessity of proof of ordinary care on the part of the plaintiff at the time of the injury, to entitle him to recover. The instruction laid down a correct principle of law, but as the court gave five other instructions for appellant covering the same ground, one of which was very similar in terms to the instruction refused, it was not error for the court to refuse the instruction named. Two other of the refused instructions also referred in different ways to the necessity of ordinary care and caution on the part of plaintiff, which was fully covered by the instructions given. The other refused instruc-

tions were either covered in principle by those given, or were incorrect in substance.

The judgment of the court below will be affirmed.

*Affirmed.*